WILLIAM S. ROLLIN, Respondent, *v.* SARAH J. CROSS, Appellant.

Under the statute authorizing "mechanics' liens" in the counties of Kings and Queens (Laws 1862, chap. 478, p. 947), a lien cannot be acquired for work done or material furnished under a contract with an equitable owner, as against one holding the legal title, unless the building is constructed by permission of the latter.

But, if the equitable owner permits the building to be erected, and, before lien filed, by the performance of a contract of purchase becomes the legal owner, the conveyance will be held to relate to the time when the contract of purchase was made, and such owner to be within the statute.

The lien given by the statute is, in general, a personal right given to the mechanic, material man and laborer, for his own personal protection, and an assignee of his claim is not authorized to file a lien, unless such assignment is for the benefit of the assignor, to be held as by his agent, so that the lien may be preserved.

(Submitted June 9th; decided June 22d, 1871.)

APPEAL from an order of the General Term of the Supreme Court, second district, affirming a judgment in favor of the plaintiff, entered upon the report of William J. Cogswell, referee.

The action is brought to foreclose a mechanic's lien on premises in Brooklyn.

November 10th, 1867, Thomas S. Goodwin made a contract with Edward Pick to build a house on the premises for him. At that time Charles C. Betts was the legal owner of the land. Pick did work and furnished materials to the amount of $800, and then assigned the contract and the moneys due him thereunder to the plaintiff. The assignment was made January 8th, 1868. After the assignment, Rollin went on and did work and furnished materials to the amount of $400, between the date of assignment and the date of filing lien. On the 13th of January, 1868, Betts conveyed the property to the defendant by deed dated September 14th, 1867, but not acknowledged or delivered until January 13th, 1868.

The plaintiff filed his lien for the amount of all the work done and materials furnished, both by Pick, the original contractor, before assignment, and by himself, as assignee of the contract, after assignment of the contract to him. On the 16th of April, the defendant conveyed the property to William H. Rushmore, who now holds the fee.

The whole amount of the work done by the plaintiff and materials furnished by him, after the contract was assigned to him, was $400. The lien is filed against Sarah Cross, the

defendant, who owned the fee from January 13th, 1868, to April 16th, 1868, and not against Betts, who owned the fee when the contract was made.

The judgment is given for the plaintiff for the whole amount of his claim, $1,200, and interest and costs, including the work and materials done and furnished by Pick, the original contractor, before he assigned the contract to the plaintiff. Goodwin and Pick acted on the assumption that the defendant owned or had an interest in the premises.

The work was done with the knowledge and consent of the defendant, although she did not authorize Goodwin to make any contract for her, and did not intend to become personally responsible.

*Crooke, Bergen* and *Clement*, for the appellant.

*J. L. Overfield*, for the respondent.

ANDREWS, J. It is found by the referee, that the land upon which the lien is claimed was not conveyed to the defendant until January 13th, 1858.

But it is a just inference from the findings, in connection with the evidence, that when the contract was made between Goodwin and Pick, on the 10th of November, 1867, she held the land under a contract of purchase from Betts. His deed to her, although it was not acknowledged until the 13th of January, 1868, was dated the September previous.

The witness, Goodwin, testifies that Mrs. Cross purchased the lot, and that a house was to be built upon it for him and his family, and that she was to advance money to assist him in building it. The parties acted upon the assumption that Mrs. Cross had an interest in the premises. The contract was made, and the work on the house was commenced without any consultation, so far as it appears, with Betts, and he subsequently delivered the deed to Goodwin for her.

There is no proof when the purchase-money was paid, or whether anything had been paid at the time the contract for

building the house was made. The legal title to the land at that time was in Betts, subject to such rights as Mrs. Cross had under her contract of purchase.

The statute under which the lien is claimed (Laws 1862, chap. 478), gives to a contractor for building a house a lien upon the land upon which it is built, under certain conditions, and upon the existence of certain facts, which are specified in the act.

The work must be performed under a contract with the owner of the land, or his agent, or with a person permitted by the owner to build upon it. (§ 1.) The lien given by the statute is one unknown to the common-law, and the party claiming under it a lien upon the premises of another, must bring himself within its terms.

In the absence of any definition in the statute, it might well be that a person having an equitable title to the land upon which the work was done and a right to a conveyance of the property would be regarded as the owner of the land, within the statute, and that the lien, under a contract made with a party having such a relation to it, would attach to the equitable interest, as upon a contract made with the owner.

The vendee in such a contract is treated in equity as the owner, and many of the incidents to a legal title attach to the interest of a vendee under a contract of sale.

But the first section of the act referred to, after defining the persons in whose favor the lien may be created, and declaring that the lien shall extend to the value of labor and materials performed or furnished " by virtue of any contract with the owner of the lands or his agent, or with any person permitted by the owner of the lands to build, etc.," thereon, concludes as follows: " In cases in which the owner has made an agreement to sell and convey the premises to the contractor or other person, such owner shall be deemed to be the owner, within the meaning and intent of this act, until a deed shall have been actually delivered so as to pass the fee simple of said premises."

It is the clear construction of this statute, that a lien upon the land cannot be acquired for work done or materials furnished under a contract made with the equitable owner, as against the person holding the legal title, unless the building is constructed by his permission. When the work is done by his consent, the lien attaches to the land and is a charge upon his interest therein. If no consent has been given, the contract is not within the statute.

It was the design of the statute to charge the land with debts contracted in improving it, in case the owner permitted the work to be done, although under a contract made with the vendee.

If the contract of sale should be surrendered or forfeited, the value of the owner's interest would be increased by the accessions made to the land, and if the purchaser completed the purchase, he would take it charged with the lien in favor of those who had contributed their labor and property in improving it.

It was held in *Loonie et al.* v. *Hogan* (9 N. Y., 435) that the owner of a lot who had contracted to sell it, and to make a loan to the purchaser to build upon it, was not the owner of the building erected by the purchaser within the lien law of 1830 (Laws 1830, p. 412), although, by the agreement of sale, the title was not to be transferred to the vendee until the completion of the building.

The statute in question protects laborers and material men against such a construction.

The permission of the vendee to build upon the land is, by such an agreement, a part of it, and under a contract made with the vendee, the lien given by statute could be secured.

In this case, Mrs. Cross, who had the equitable title to the premises when the contract was made, permitted Goodwin, who made the contract with Pick, to build upon them.

Before the time arrived for filing the lien, her equitable title became a legal one by the conveyance to her, and that title remained in her when the lien was filed.

The legal title was acquired, under her contract with Betts, which existed when the building contract was made.

The inchoate right under the contract of purchase was perfected and became a legal title by the conveyance.

It is consistent with legal analogies to hold that the conveyance related to the time when the contract of purchase was made, and that the defendant was, within the statute, the owner of the land, when Goodwin and Pick, by her permission, entered into the contract for building the house, and this construction supports the equities of this case.

In this view the conditions of the statute are met, and a lien under it was given, and was properly filed against the defendant.

The lien was filed by the plaintiff as assignee of the contract with Pick.

At the time of the assignment, a portion of the work had been performed by the original contractor, and it was completed by the assignee.

The notice of lien was filed for the value of the whole work, and by the judgment the lien was allowed to be enforced, as well for the work done before as after the assignment.

The assignee was not, we think, entitled to a lien for the work done before the assignment.

The lien under statutes of this character is, in general, a personal right given to the mechanic, material man and laborer, for his own protection, and the right to create it cannot be assigned or transferred to another, (*Daubigny* v. *Duval*, 5 Tenn., 604; *Caldwell* v. *Laminer*, 10 Wis., 332; *Pearsons* v. *Tincker*, 36 Me., 384), unless the assignment is made for the benefit of the assignor, and to be held as his agent, so that the lien may be preserved. (*Urquehart* v. *McIver*, 4 Jo., 102; *McCombie* v. *Davies*, 7 East, 5.)

The statute, under which the plaintiff claims, does not authorize a lien to be filed by the assignee of a debt for work performed under a building contract.

The words "or other claimant" in the third section do not, we think, enlarge the specification, in the first section, of the persons in whose favor a lien may be created.

The judgment should be reversed, unless the plaintiff elects to reduce the judgment to $400, with interest from March 11, 1868, in which case the judgment is affirmed without costs.

CHURCH, C. J., ALLEN, FOLGER and RAPALLO, JJ., concur. GROVER, J., dissents. PECKHAM, J., not voting.

Judgment reversed, unless reduced to $400 and interest from March 11, 1868; in which case judgment affirmed.