The order appealed from should, therefore, be reversed.

Ordered accordingly.

---

GEORGE E. MEYERS *et al.* Respondents, *against* JAMES GORDON BENNETT (Impleaded), Appellant.

(Decided February 4th, 1878.)

Under the Mechanics' Lien Act, applicable to the city of New York (L. 1863, c. 500), as amended in 1866 (L. 1866, c. 752), labor done on premises in pursuance of a contract with a prior owner, cannot be the subject of lien as against a succeeding owner, and unless such lien had already been imposed before any transfer of the title is effected by deed or operation of law, any proceedings thereafter instituted under the act are entirely ineffectual, even to afford any right to a personal judgment between any of the parties to the contract.

Where, therefore, an owner of property in New York City made a contract for the

erection of a building thereon, and before the work was completed died, having devised the property in trust, and the contractor, under the direction of the trustee (who was also executor of the deceased), proceeded with the work according to the contract.—*Held,* that the filing of notices. after the death of the owner, in accordance with the provisions of the act, did not create any lien upon the trust estate, and that in proceedings to foreclose the liens claimed to have been acquired by the filing of such notices, a personal judgment could not be rendered against the trustee.

APPEAL by the defendant, Bennett, from a judgment of this court, entered on the report of Homer A. Nelson, Esq., who had been appointed referee to hear and determine the issues, in favor of the plaintiff and certain of the lienors, defendants.

The facts necessary to an understanding of the decision here are stated in the opinion.

*John Townshend,* for appellant.

*Niles & Bagley,* for respondent Meyers.

*L. Laflin Kellogg,* for respondent Murray.

*John B. Perry,* for respondent Ritch.

VAN HOESEN, J.—A contract was made on the fifth of February, 1872, between James Gordon Bennett (now deceased) and Edward Hall, for the mason work of a building to be erected according to certain specifications upon certain premises owned by the former, and constituting the entire lot fronting on the west side of Nassau street, between Ann and Fulton streets. The building was to be completed on or before the first day of April, 1873.

The work was to be paid for in monthly instalments as it progressed, to the amount of eighty per cent. of the value of the work, upon certificates of the superintendent and architect that the work had been done in a good, workmanlike and substantial manner, and the balance of twenty per cent. paid on the like satisfactory completion of the whole.

It was further provided that if the contractor should, during the progress of the work, refuse or neglect to supply sufficient materials or workmen, the owner should have power to provide materials and workmen after three days' notice in writing to the contractor to finish said work, the expense to be deducted from the amount of the contract.

The contractor commenced the work on the 1st of May, 1872. James Gordon Bennett, who thus contracted with Edward Hall, died in May or June, 1872, leaving a last will and testament, by which he devised the premises and his other residuary estate to the defendant upon trust to collect the rents and profits, and after paying "taxes, assessments, interest, and other outgoings," to pay the residue to his daughter Jeanette during the lifetime of his wife; and on the death of the latter all such estate was to be divided equally between the defendant and his sister Jeanette. By a subsequent codicil the interest of Jeanette was limited to a life estate, with remainder to her children or descendants. Mrs. Bennett, the widow, died March 31st, 1873, and as to Jeanette the trust continues.

The referee finds that the defendant "individually, and as such trustee, ratified and adopted said contract with said Edward Hall," and authorized and directed him to proceed under the same, and erect said building, but fails to find the further allegation of the claimant that he "assumed" said contract. The finding is ambiguous, and is not founded upon any agreement shown to have been made by the defendant upon any new and independent consideration, nor by any writings signed by him, to create any liability within the provisions of the Statute of Frauds. It establishes no personal claim against the defendant after the death of his father. The contractor, Hall, after the death of the father, proceeded to perform the work under the original contract, and nothing is suggested by the pleadings or testimony exempting the estate of the father from the payment of any debt arising under his contract. The finding that the defendant "ratified and adopted" the contract and directed the

contractor to proceed to erect the building, is but a finding that he did not attempt to repudiate or rescind it, but fully recognized the obligations of his testator. The obligations of his father, or of his estate after his death, were in no way superseded, altered or modified by that event. It is only by force of the devise to the defendant of the legal title, as trustee of the whole and remainder-man as to one-half of the property, that any personal obligation can be suggested. The contract was not for the personal services of the contractor nor was it of such a character as to be affected by the testator's death. The claims of the alleged sub-contractors and lienors in whose favor personal judgments have been rendered against the defendant, as also those of the lienors, William and Thomas Ritchie and Patrick Murray, which have been adjudged to exist as against the property on which the work was performed by them, or for which materials were furnished, wholly depend in the first instance upon the right of Edward Hall, the contractor.

The alleged liens were all imposed in September and October, 1872, which was three months after the death of James Gordon Bennett, the contracting owner. None of them, so far as established by the judgment, existed upon any debt personally created by the defendant as owner, but were all founded upon the contract made by the testator with Edward Hall.

The contract not being of such a character as to be affected by the testator's death, was one that continued, notwithstanding the death or transfer of the interest of either party, but no such personal assumption of any of its obligations by the defendant having been shown, the personal judgments awarded against him cannot be sustained.

Ownership of the property by a contracting owner must, in my opinion, *exist throughout performance of the original contract*, and be concurrent therewith, in order to render the property liable for work done thereon, and authorize the imposition of a lien under the Mechanics' Lien Law of 1863. No lien can be created on the interest of any person as

owner of the premises, except he has himself, or by his agent, entered into the contract under which the work was performed (*Muldoon* v. *Pell*, 54 N. Y. 269; *Knapp* v. *Brown*, 45 N. Y. 207). Should a third party, disconnected with the title, upon his own responsibility, contract for such work, the law contemplates no interference with the title of the owner of the property, nor does it accord to any one any right of lien therefor. It is the title of the *contracting owner* only that is made the subject of any such liens, and it can only be made effectual as against such title as existed in him when the lien of the contractor or sub-contractor is imposed.

Therefore, work done on premises in pursuance of a contract with a prior owner is not the subject of lien proceedings under the act of 1863 as against a succeeding owner, and unless such lien has already been imposed before any transfer of the title is effected by deed or operation of law, any proceedings thereafter instituted under the act are entirely ineffectual, even to afford any right to a personal judgment between any of the parties to the contract.

The act of 1863, as amended by chap. 752 of the Laws of 1866, only authorizes a sale of the right, title and interest which the owners shall have in the premises at the time of the filing of the notice of lien (Laws 1866, c. 752, vol. 2, p. 1634). The amendment materially varied the rights of lien created by the act of 1863, which was upon the house or building and the appurtenances, and the lot on which the same should stand, notwithstanding any sale or transfer made after the commencement of the work or furnishing of material. (L. 1863, c. 500, §1.) This, as remarked, has reference to the *contracting* owner, and not to subsequent purchasers who have succeeded to the title before the lien was created, even if they have assumed payments of the claims (see cases cited in Guernsey's Mech. Lien Law, § 89 to 92; *Quimby* v. *Sloan*, 2 E. D. Smith) 594; and it is the fourth proposition affirmed by this court in the case of *Bailey* v. *Johnson* (1 Daly, 61), supported by numerous authorities therein cited.

The death of the testator and contracting owner, and his devise of the premises to the defendant upon trusts, which

have been accepted, constituted the latter a purchaser in good faith with a title entirely distinct from that of his testator. Any inchoate right, either to the lien or to its enforcement by proceedings in this court, abated by the testator's death. (*Leavy* v. *Gardiner*, 63 N. Y. 624). The trustee was without any authority to enter into any such contract or create any lien upon the premises in question (part of the trust estate) for the purpose of erecting buildings thereon.

Under these views I am of opinion the judgment should be reversed and a new trial ordered, with costs to abide the event.

JOSEPH F. DALY, J., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.