**MARTIN et ux. v. SWANK et al.**

**No. 9547.**

Court of Civil Appeals of Texas. Austin.

April 17, 1946.

Rehearing Denied May 8, 1946.

Preston P. Mangum and George Sergeant, both of Dallas, for appellants.

Shook & Shook and J. L. Shook, all of Dallas, for appellees.

## McCLENDON, Chief Justice.

This appeal is from a judgment partitioning apartment house property in Dallas, ordering the property sold by a receiver appointed for that purpose, and the proceeds, after payment of costs, divided as follows: ¼, less $460.03, to E. C. Martin (defendant below, appellant here); and the remaining ¾, plus the $460.03, to Mrs. Swank ⅜, Mrs. Jannasch 3/16, and Mrs. Ziegler 3/16 (plaintiffs below, appellees here). The appellants excepted to that "portion of the judgment only which awarded the plaintiffs the sum of $460.03 against the defendants."

The · property originally belonged to John M. Martin (the father of E. C. Martin and Mrs. Swank, and grandfather of Mesdames Jannasch and Ziegler), who died May 3, 1944. His duly probated will, dated February 16, 1943, devised all his property ½ to Mrs. Swank and ¼ each to Mesdames Jannasch and Ziegler. Mrs. Swank was named and qualified as independent executrix. September 21, 1943, John M. Martin conveyed a ¼ undivided interest in the property to E. C. Martin for the recited consideration of $3,000 theretofore paid and love and affection.

The only grounds of error urged are: (1) refusal of appellants' offer in evidence of an instrument executed January 17, 1944, by John M. and E. A. Martin, referred to as Ex. 7, on the ground that it was not admissible under the pleadings (general denial); and (2) refusal of request to permit an appropriate amendment to the pleadings.

On January 31, 1944, in a suit by John M. Martin against E. C. Martin and wife, judgment was rendered decreeing ¾ interest in the property in John M. Martin and ¼ interest in E. C. Martin. The excluded instrument (executed while this suit was pending and 14 days prior to the judgment therein) recited joint ownership of propetry, and contained the following provisions:

"1. Said John M. Martin shall occupy rent or otherwise control one room located at the rear of the apartment known as 4908 Reiger Avenue for his lifetime and no accounting to be made for such occupancy in computing the revenue from the property. Any and all revenues derived from the rental of said room to be the personal property of John M. Martin.

"2. Said E. C. Martin shall occupy rent or otherwise control the small apartment located at the rear of the garages until such time that the property is sold or divided for the settlement of the estate. All revenues derived from the rental of the said apartment shall be the personal prop-

erty of E. C. Martin and shall not be considered in computing the revenue from the property.

"3. If and when a division of the estate is made or a sale in the settlement of the estate it is hereby distinctly agreed that E. C. Martin shall be allowed the sum of One Thousand and Eighty-five Dollars and twenty-two cents ($1.085.22), this amount being the net cost of the apartment which was paid for by E. C. Martin personally and represents the amount of $1,085.22 in addition to the one-fourth interest now owned by said E. C. Martin.

"4. It is agreed to by the parties hereto that all rentals on the premises shall be paid to said John M. Martin and that he shall use them for the purpose of defraying any and all expenses in connection with the property and for his personal expenses for his lifetime. It is further agreed that an accurate record of revenue derived and maintenance and upkeep of the property shall be kept and any amounts shown as net income from the property, after taxes, insurance and other expenditures have been paid, shall be pro-rated between John M. Martin in the proportion of one-fourth to E. C. Martin and three-fourths to John M. Martin. Proper credit shall be allowed both John M. Martin and E. C. Martin for monies expended by either party in connection with upkeep, maintenance or other costs in connection with the property.

"5. Any monies shown as due E. C. Martin from net income from the property, cash advanced by E. C. Martin or other items paid for by E. C. Martin shall be applied as payment on additional interest in the property based on the original purchase price of $3,000 for a one-fourth interest or, in other words, an agreed valuation of $12,000.

"6. It is further agreed that E. C. Martin shall be charged rental on the lower West Apartment on the same basis as the upper West Apartment for the purpose of computing revenue although said E. C. Martin shall be allowed to sub-rent the apartment and collect all rentals for same."

Appellees' petition is quite voluminous. For our present purposes (admissibility of Ex. 7) we make the following résumé of its allegations:

The plaintiffs were Mesdames Swank, Jannasch and Ziegler, individually, and Mrs. Swank also in her capacity as independent executrix. In addition to E. C. Martin and wife, it impleaded several parties who were tenants in the apartments and who were alleged to be paying rentals to E. C. Martin and wife. It set up the will, its probate, etc., alleged ownership of the property in John M. Martin. It asserted his other property consisted of personalty valued at $500; listed his debts as aggregating $4,631.50; charged E. C. Martin and wife with unlawful collection of rentals from tenants; and that prior to the death of John M. Martin, E. C. Martin had collected certain moneys of unknown amount, that "he has failed to disclose or account for any of said sums and at this time holds money belonging to said estate, which money would first be used for the payment of debts due by the estate, and as to any excess would pass to these plaintiffs as the devisees of John M. Martin under the will aforesaid"; that E. C. Martin and wife were occupying one of the apartments of the reasonable rental value of $50 per month for which they had failed to account; that he had bought water heaters for and had made alterations in the apartment over protests of the plaintiffs. A receiver was asked for to take charge of the property and wind up the estate, and in the alternative that commissioners be appointed to sell the property as it could not be partitioned in kind. Another count was one formally in trespass to try title. Still another count was for partition.

The trial of the case seems to have followed a somewhat unusual course as appears from the statement of facts certified to as containing only a portion of the evidence. The first seven pages of the statement of facts are taken up with testimony of Mr. and Mrs. Swank, then follows this statement: "The witness, J. F. Swank continued to testify at great length with reference to the receipts of rent and expenditures made by both Mrs. J. F. Swank as executrix and by Eugene C. Martin, the defendant, all of which testi-

mony and the numerous exhibits are omitted by agreement of all of the parties it being expressly agreed that said testimony of J. F. Swank fully supports the judgment rendered herein, if the instrument designated as defendant's exhibit No. 7 was properly excluded by the trial court. It is further agreed that if said exhibit No. 7 had been admitted and the court had given effect thereto, the plaintiffs from the testimony would have been entitled to further offsets against the defendants."

Following this Ex. 7 was offered, and next 15 pages of the statement of facts are taken up with discussion of its admissibility under the general denial. At one time, in the course of this discussion, the court adjoined in order to permit the parties to get together on this issue, there appearing to be no other controverted issue between them. This was to no avail, and in announcing which one of plaintiffs' attorneys stated: "If this is a suit by the heirs to settle and partition Mr. J. M. Martin's estate the matters that have arisen of accounting between the co-owners perhaps would be admissible under a plea of general denial, but this claim is a claim that would be against Mr. J. M. Martin, a personal claim that has no relation to the joint co-ownership, and would not be enforcible in this suit for the reason that this was J. M. Martin's homestead property, and any claim, personal, against him couldn't be enforced against this property, and he had no other estate; for that reason we ought not to postpone this."

It appears from this discussion that plaintiffs' attorneys knew all along of this Ex. 7, and had even agreed to waive its filing among the papers of the case as a predicate for its introduction in evidence.

In so far as any homestead question is concerned it has nothing to do with the case. There was no showing or claim that John M. Martin was married at the time the agreement was made, or that he had any dependents living with him who had any homestead interest in the property. Under these circumstances his interest therein passed to his devisees, subject to his debts. See Harms v. Ehlers, Tex.Civ.App., 179 S.W.2d 582, error ref.

Likewise under these circumstances the agreement, in so far as it affected his interest in the property, was one he could validly make, even though the property was his homestead. On its face it shows to be an agreement between joint owners of the property respecting its use, occupancy, the collection and disposition of rentals, and provides for a charge upon the property of $1,085.52 in favor of E. C. Martin in case of its sale or partition. That this instrument was admissible under the circumstances and the pleadings, whether the suit be regarded as one for settlement of the John M. Martin estate, or for partition of the apartment property, we think is clear. The only ground of its exclusion being want of sufficient pleading, we hold such action of the trial court constitutes reversible error.

Whether the instrument was merged in the judgment of January 31, 1944, as appellees seem to contend, and, if not, what may have transpired under the terms of the agreement as bearing upon their rights, are matters which do not go to the admissibility of the agreement as against the objection sustained.

This holding renders immaterial the action of the court in refusing a trial amendment.

In so far as the judgment partitions the property, orders its sale, adjudicates the interests of the parties, charges the proceeds with the costs and the interests of appellees with certain items, it is affirmed. In so far as it awards appellees $460.03 out of E. C. Martin's share of the proceeds, it is reversed and the cause is remanded to the trial court for further trial upon the issues arising under the instrument of January 17, 1944.

Affirmed in part and in part reversed and remanded.